

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**07/21/2008**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **DECKER OAKS DEVELOPMENT** | § | **CASE NO. 07-35557-H4-11** |
| **II, LTD.** | § | |
| | § | **Chapter 11** |
| **Debtor** | § | |
| | § | |
| | § | |
| **ROYCE HOMES, L.P.** | § | |
| | § | |
| **Plaintiff** | § | **ADVERSARY NO. 07-3421** |
| | § | |
| vs. | § | |
| | § | |
| **DECKER OAKS DEVELOPMENT** | § | |
| **II, LTD., ROBERT WEEDN** | § | |
| **DEVELOPMENT LTD., AND** | § | |
| **ROBERT WEEDN, Individually** | § | |
| | § | |
| **Defendants** | § | |

**MEMORANDUM OPINION ON (1) MOTION OF ROYCE HOMES, L.P. TO STAY**
**EXECUTION OF JUDGMENT PENDING APPEAL AND TO ACCEPT ALTERNATIVE**
**SECURITY; AND (2) EMERGENCY MOTION OF ROYCE HOMES, L.P. TO REMOVE**
**JUDGMENT LIEN FROM CERTAIN PROPERTIES**

### I. Introduction

On July 8 and 9, 2008, this Court held a hearing on two motions: (1) Motion of Royce

Homes, L.P. to Stay Execution of Judgment Pending Appeal and to Accept Alternative Security

[Adv. Doc. No. 49] (the Motion to Stay); and (2) Emergency Motion of Royce Homes, L.P. to

Remove Judgment Lien from Certain Properties [Adv. Doc. No. 51] (the Motion to Remove

Liens). Royce Homes, L.P. (Royce) filed these motions in the wake of this Court's issuance of a

Judgment against it for $2,309,500.00 [Adv. Doc. No. 43] (the Judgment), which Royce

appealed on June 30, 2008 [Adv. Doc. No. 46]. Decker Oaks Development II, Ltd. (Decker Oaks), the party who was awarded the Judgment, opposes both motions.

The Court heard testimony from one witness, John H. Speer (Speer), the President and 100% owner of Royce. The Court finds that Speer is a credible witness. After hearing Speer's testimony, reviewing the nine exhibits introduced by Royce, and listening to oral arguments of counsel for Royce and Decker Oaks, the Court made oral findings of fact and conclusions of law on the record. The Court now reduces these findings and conclusions to writing. To the extent that these written findings and conclusions differ from the oral findings and conclusions, the former shall govern.

## II. Findings of Fact

**A.    Royce's financial situation and ability to post a supersedeas bond:**

1.    Royce is a privately-owned real estate developer and home builder that consistently ranks among the top twenty-five privately-owned companies in Houston, Texas. Royce currently has approximately 150 employees in Houston.

2.    Due to an overall decline in the residential real estate market, Royce has suffered a decline in annual sales from approximately $300 million in 2006 to $150 million in 2007.

3.    Decker Oaks recorded the Judgment in several counties soon after it was entered on the docket. These judgment liens caused Royce to delay seven of its closings scheduled for the week of July 7, 2008. Buyers were unable to obtain the necessary title insurance because of the pending judgment lien against the properties. Without title insurance, these closings could not be completed.

4.      Royce's proceeds from closings are used to pay principal and interest on Royce's loans, as well as Royce's ongoing operating costs.

5.      Royce's loans are secured by a first lien on all of its assets.

6.      Executing the Judgment against any of Royce's assets would result in foreclosure and zero equity flowing to Royce or its judgment creditor, Decker Oaks.

7.      All of Royce's loans with its lenders contain a "due on sale" or "encumbrance" clause that may result in foreclosure whenever a judgment lien is recorded against the real property securing the loan.

8.      Speer testified that despite his good faith attempts, Royce has been unable to obtain a supersedeas bond or a letter of credit since this Court issued the Judgment.  Royce's financial statements for 2007 underscore its financial inability to post a bond.

**B.      Royce's proposed alternative security: its partnership interest in 501 Maple Ridge Ltd.**

9.      501 Maple Ridge Ltd. (Maple Ridge) is a limited partnership whose limited partners are the following entities: Park Lake Communities, L.P. (Park Lake), Hammersmith Group, Inc. (HGI), and MM Home Rental.  These entities own 59%, 1%, and 40% of Maple Ridge, respectively.  HGI, the general partner of Maple Ridge, is wholly owned by Speer.  Royce owns 100% of Park Lake and therefore 59% of Maple Ridge.

10.     Maple Ridge's sole tangible asset is a 618-acre tract of land located on Telge Road in Houston, Texas.  Royce improved the land by creating a Municipal Utility District (MUD) and building a water plant on the property.

11.     According to the Maple Ridge partnership agreement, Royce is entitled to receive the balance of its equity contribution to the partnership, plus (a) a 15% annual return on its contribution; and (b) a 60% share of any profits.

12.     The proceeds from a currently pending contract on the tract could, if the contract is consummated, potentially net $2.9 million for Royce.  This sum, if received and set aside, would be just as satisfactory as a bond to protect Decker Oaks while Royce prosecutes its appeal.

### III. Conclusions of Law

**A.     Jurisdiction and Venue**

Royce has requested a stay of execution of the Judgment pending its appeal; Royce has also petitioned this Court to accept an alternative form of security in lieu of a supersedeas bond. Pursuant to Federal Rule of Bankruptcy Procedure 8005, "[a] motion for a stay of the judgment . . . [or] approval of a supersedeas bond . . . must ordinarily be presented to the bankruptcy judge in the first instance."  A bankruptcy judge must issue its orders during the pendency of an appeal so as to "[protect] the rights of all parties in interest."  Fed. R. Bankr. P. 8005.

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(a) and (b). This dispute is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O) because: (1) the Judgment affects the administration of Decker Oaks' Chapter 11 estate; and (2) staying the Judgment will affect the plan confirmation process in this case.  A core proceeding is one that affects the distribution of the debtor's assets.  *Howell Hydrocarbons, Inc. v. Adams*, 897 F.2d 183, 190 (5th Cir. 1990).  Enforcing a money judgment, whether against or in favor of the debtor, affects the distribution of the debtor's assets by increasing or decreasing the funds available to the estate.  *See State Farm Mutual Ins. Co. v. Wilkins*, No. 05-20934, 2007 WL

2186274, at *2 (5th Cir. July 30, 2007).  Furthermore, this Court has jurisdiction to enter a stay

of execution of the Judgment.  *Farmhand, Inc. v. Anel Eng'g Indus., Inc.*, 693 F.2d 1140, 1145-

46 (5th Cir. 1995).  Venue is proper pursuant to 28 U.S.C. § 1409.

**B.**     **Royce has carried its burden to show that it is entitled to a stay pending appeal.**

A court must consider four factors when deciding whether to grant a stay pending appeal:

(1) Whether the movant has made a showing of likelihood of success on the
merits; (2) Whether the movant has made a showing of irreparable injury if the
stay is not granted; (3) Whether the granting of the stay would substantially harm
the other parties; and (4) Whether the granting of the stay would serve the public
interest.

*Arnold v. Garlock, Inc.*, 278 F.3d 426, 439-42 (5th Cir. 2001); *In re First South Savings Ass'n*,

820 F.2d 700, 704 (5th Cir. 1987).  The Court will consider these factors in turn as they relate to

the Motion to Stay and the Motion to Remove Liens.

**1.  Whether the movant has made a showing of likelihood of success on the merits.**

Because this Court has already entered judgment against Royce in this adversary

proceeding, the Court is not prepared to conclude that Royce has shown a likelihood of success

on the merits.  However, "the appellant need not always show a probability of success on the

merits; instead, the movant need only present a substantial case on the merits when a serious

legal question is involved and show that the balance of the equities weighs heavily in favor of

granting the stay."  *Arnold*, 278 F.3d at 439 (citations omitted); *First South Savings*, 820 F.2d at

704.

Royce has presented twenty-one points of error challenging this Court's findings of fact

and conclusions of law.  These points of error include the Court's findings on whether an option

contract may be subject to tortious interference, whether the Court based the Judgment on facts

not pleaded, whether Royce had a good faith claim justifying its interference with the Saratoga

Springs contract, and whether the Court erred in awarding consequential damages and prejudgment interest [Adv. Doc. No. 50, pp. 2-5]. While in this Court's view Royce does not have a high probability of success, the Court is unwilling to deprive Royce of its opportunity to stay the Judgment pending appeal without first considering the interests at stake. *In re Mounce*, No. 03-55022, 2008 WL 2714423, at *2 (W.D. Tex. July 10, 2008) (stating that " . . . courts should not deny applications for a stay pending appeal simply because the movant has failed to demonstrate its likelihood of success on the merits"). Accordingly, the Court weighs this first factor against the other three factors discussed below to determine whether "the balance of the equities weighs heavily in favor of granting the stay." *Arnold*, 278 F.3d at 439.

### 2. Whether the movant has made a showing of irreparable injury if the stay is not granted.

The recording of judgment liens in counties where Royce seeks to sell homes has halted closings due to buyers' inability to obtain title insurance on the properties.  [FOF No. 3]. The proceeds from closings are necessary to maintain Royce's cash flow.  [FOF No. 4]. If these closings do not take place, Royce will be unable to continue normal business operations.  Thus, Royce has demonstrated that enforcing the Judgment against it will result in irreparable injury.

### 3. Whether the granting of the stay would substantially harm the other parties.

Royce has presented evidence to show that Decker Oaks' execution on the Judgment would net nothing of value for Decker Oaks to collect, as these assets are secured by first liens exceeding their value. [FOF No. 5-7]. Regardless of whether a stay is granted, Decker Oaks will be unable to immediately collect the Judgment because Royce has no equity in any assets. Additionally, Decker Oaks contends that granting a stay without requiring Royce to post a full supersedeas bond will harm its ability to secure the Judgment.  However, Royce has shown that despite its efforts, it has been unable to secure a supersedeas bond in the amount of the

Judgment.  [FOF No. 8].  Royce offers to pledge its partnership interest in Maple Ridge to Decker Oaks as alternative security.  The Court finds that proceeds from the potential sale of the tract owned by Maple Ridge (discussed in Section C of this Opinion) would probably net sufficient cash to cover the bond amount calculated by the Court.[1]  [FOF No. 12].  However, if the tract remains unsold, or if the tract sells for less than the bond amount, this partnership interest alone will not provide adequate security for Decker Oaks during the pendency of Royce's appeal of the Judgment.  To provide additional security, the Court will require Royce to set aside $25,000.00 currently held by Stewart Title[2] and $500.00 from every closing for the benefit of Decker Oaks.  These protections, combined with Royce's offer of its partnership interest in Maple Ridge, will adequately secure the Judgment and will not substantially harm Decker Oaks' interests.

### 4.  Whether the granting of the stay would harm the public interest.

Royce has shown that if the judgment liens remain in place, it will be unable to continue closings or to maintain the normal functioning of its business.  [FOF No. 3-4].  If the Court grants Royce's two motions, judgment liens will be lifted, closings will move forward, and homebuyers will be able to move into their new homes as previously scheduled.  In addition, Royce will have the ability to continue paying its vendors and employees.  Thus, granting the

---

[1] The Court's bond amount of $2,620,000.00 is based on the Judgment against Royce for $2,309,000.00 in damages plus (1) 5% pre-judgment simple interest from December 5, 2007 until June 27, 2008; and (2) 5% post-judgment interest, compounded annually, for two years from June 27, 2008. *See* Memorandum Opinion on (1) Plaintiff's Complaint; and (2) Defendant's Counter-Claims of June 5, 2008 [Adv. Doc. No. 37, pp. 56-63].

     This Court has discretion to factor the costs of appeal and delay in execution on the Judgment into the assessment of the required bond amount. *In re Stanton*, No. 06-3309, 2007 WL 776543, at *2 (S.D. Tex. March 8, 2007) (explaining that the present Federal Rule 62(d) governing the posting of supersedeas bonds "has been read consistently with the earlier rule."  The earlier rule specified that a court should include the whole judgment amount, the costs of appeal, damages for delay, and interest when computing a bond amount).

[2] *See* Memorandum Opinion on (1) Plaintiff's Complaint; and (2) Defendant's Counter-Claims of June 5, 2008 [Adv. Doc. No. 37, p. 64]; Judgment of June 27, 2008 [Adv. Doc. No. 43, p. 2].  The Judgment, among other things, awarded $25,000.00 to Royce, monies that Stewart Title holds in escrow.

stay will actually benefit the public, not harm it. Furthermore, Royce has shown that executing on judgment liens currently in place will not serve the interests of Decker Oaks or its creditors. Decker Oaks is in Chapter 11 and has not yet obtained confirmation of a plan of reorganization. As a debtor-in-possession, Decker Oaks has a fiduciary duty to its creditors to maximize the chances that the Judgment can be collected. *See Dodson v. Huff (In re Smyth, III)*, 207 F.3d 758, 761 (5th Cir. 2000). If the Court grants Royce's request for alternative security, Decker Oaks will adequately protect its ability to collect the Judgment for the benefit of its own creditors. As a result, it is also in the public interest to grant Royce's request for alternative security. Accordingly, the Court concludes that granting Royce's motions will not harm the public interest.

All four factors, weighed together, favor granting a stay pending appeal. Accordingly, the Court grants the primary relief requested in the Motion to Stay; execution on the Judgment will be stayed so long as Royce takes steps to adequately protect Decker Oaks' interest in the Judgment pending Royce's prosecution of its appeal. The Court now discusses the other relief requested in the Motion to Stay: Royce's request for alternative security in place of posting a supersedeas bond.

**C.    The alternative security offered by Royce, plus additional requirements imposed by this Court, will adequately protect Decker Oaks during the pendency of Royce's appeal.**

A "money judgment" is a judgment that binds a party to pay a specific sum of money. *Herbert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992). In the suit at bar, there is no question that the Judgment appealed by Royce is a money judgment [Adv. Doc. No. 43, pp. 2-3]. According to Federal Rule of Civil Procedure 62(d), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7062, a party appealing a money judgment may obtain a

stay of execution as a matter of right if it posts a full supersedeas bond.  However, the Court may

grant a stay without requiring a traditional bond under certain circumstances:

> [(1) If] a judgment debtor objectively demonstrates a present financial ability to
> facilely respond to a money judgment and presents to the court a financially
> secure plan for maintaining that same degree of solvency during the period of the
> appeal, [or (2)] if the judgment debtor's present financial situation is such that the
> posting of a full bond would impose an *undue financial burden*, the court
> similarly is free to exercise a [sic] discretion to fashion some other arrangement
> for substitute security through an appropriate restraint on the judgment debtor's
> financial dealings, which would furnish *equal protection* to the judgment creditor.

*Poplar Grove, Etc. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) (emphasis

added).  *See also Enserch Corp. v. Shand Morahan & Co.*, 918 F.2d 462, 464 (5th Cir. 1990);

*Waffenschmidt v. MacKay*, 763 F.2d 711, 727 (5th Cir. 1985).

As this Fifth Circuit precedent instructs, courts possess considerable discretion to devise

an alternative to posting a supersedeas bond.  *Poplar Grove*, 600 F.2d at 1191.  The moving

party bears the burden of objectively demonstrating the reasons for granting this exception.  *Id.*

As an overarching principle, this Court must consider the rights of both parties when deciding

whether to grant an alternative security arrangement.  Fed. R. Bankr. P. 8005.  "The purpose of a

supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights

pending appeal."  *Herbert*, 953 F.2d at 938; *Poplar Grove*, 600 F.2d at 1190-91.  However,

courts may also use their discretion to provide equitable relief to judgment debtors.   In

*Waffenschmidt*, the court allowed a portion of the judgment debtor's assets to serve as sufficient

collateral when "the remaining assets were already encumbered."  *Waffenschmidt*, 763 F.2d at

727.  The court noted that the importance of the judgment debtor's right to stay execution

outweighed the judgment creditor's interest in having his money judgment fully secured.  *Id.*

With these principles in mind, the Court evaluates whether Royce merits an exception to the

general rule requiring a supersedeas bond.

1.    **Royce has demonstrated undue financial burden.**

Royce has presented evidence to support a finding that posting a bond would be an undue financial burden. *Poplar Grove* requires this Court to focus on the appellant's present financial situation to determine if the appellant demonstrates an undue financial burden. 600 F.2d at 1191. The Court has assessed Royce's present financial situation by listening to Speer's testimony and reviewing Royce's financial statements. The financial statements were introduced as exhibits under seal.[3] The Court chooses not to discuss these financial statements in detail in order to preserve the confidentiality of this privately-held entity's financial condition. Based upon this evidence and oral arguments of counsel, the Court finds that Royce is illiquid and that all of its operating assets are pledged to its existing lenders. Under these circumstances, the Court concludes that posting a bond would cause Royce an undue financial burden.

2.    **Royce has demonstrated that its proposed alternative security will provide equal protection to Decker Oaks.**

Granting a request for alternative security also requires the judgment debtor to demonstrate that its proffered security will provide protection equal to that afforded by a full supersedeas bond. *Poplar Grove*, 600 F.2d at 1191. Royce has offered to pledge its partnership interest in Maple Ridge [FOF No. 11-12], which, supplemented by the additional security ordered by this Court, will provide Decker Oaks with equal protection. As already noted, this additional security will be Royce's establishment of an interest-bearing account, and Royce's deposit into this account of: (a) the $25,000.00 that Stewart Title must remit to Royce; and (b) $500.00 from every closing that Royce holds retroactive to July 8, 2008.

---

[3] While they were introduced under seal, the Court notes that counsel for Decker Oaks had the opportunity to review these documents and to cross-examine Speer about the information contained therein.

3.      **Royce's demonstration that it is entitled to a stay weighs in favor of granting the alternative security.**

Finally, this Court finds that the factors used above in determining whether to grant a stay of execution are also appropriate in determining whether to allow substitute security, because these factors adequately address the interests of both parties. *See In re Paolini*, 312 B.R. 295, 297 n.3 (E.D. Va. 2004) (finding that a court may use equitable factors—likelihood of success, irreparable injury to movant, balance of hardships, and public interest—in considering whether to grant a stay without requiring a supersedeas bond); *see also MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, No. H-05-16342007, 2007 WL 2021609 (S.D. Tex. July 10, 2007). As discussed in Section B, Royce satisfies these elements. Because Royce meets the standard for a stay of the Judgment, the Court endeavors to fashion a security arrangement that will grant Royce the full benefit of the stay.

Furthermore, applying the test set forth in *Poplar Grove*, Royce has demonstrated that (1) posting a bond will impose an undue financial burden on the company; and (2) it has the ability to provide equal protection by pledging its partnership interest in Maple Ridge. These conclusions dictate in favor of granting Royce's request for alternative security. The Court does so, however, on the express condition that Royce, in addition to pledging its partnership interest in Maple Ridge, also opens an interest-bearing account and deposits therein the following: (1) The $25,000.00 awarded to Royce under the Judgment; and (2) $500.00 from each closing held on or after July 8, 2008.

D.      **The circumstances in this suit are distinguishable from those present in other relevant precedent within the Southern District of Texas.**

In 2007, two bankruptcy courts within the Southern District of Texas refused to allow movants to post alternative security in lieu of supersedeas bonds. *See MGM Well Servs.*, No. H-

05-16342007, WL 2021609, at *2; *In re Stanton*, No. 06-3309, 2007 WL 776543, at *2 (S.D. Tex. March 8, 2007). However, these cases are distinguishable. Unlike Royce, neither movant met its burden of proof by establishing the four factors listed above.

In *Stanton*, the movant requested the court to accept a bond for less than the amount of the money judgment. 2007 WL 776543 at *2. Royce, however, has offered as alternative security a partnership interest that is close to the value of the full supersedeas bond amount, particularly given the additional security that this Court will require Royce to pledge to protect Decker Oaks (i.e., the $25,000.00 in cash and the $500.00 per closing). Additionally, the movant in *Stanton* offered no evidence as to how this lesser bond amount would offer equal protection for the other parties. *Id.* Conversely, Royce has not only demonstrated that its partnership interest and the additional monetary security ordered by this Court will provide ample protection for Decker Oaks; it has also presented evidence that requiring a cash bond or executing on the Judgment against it would result in Decker Oaks' inability to collect the debt owed to it.

In *MGM Well Services*, the bankruptcy court refused to approve alternative security because the movant failed to objectively demonstrate that posting a full supersedeas bond would place an undue financial burden on the company. 2007 WL 2021609 at *1. The only evidence introduced to establish financial hardship consisted of an affidavit and an unaudited balance sheet produced by an individual the court deemed to have "limited credibility." *Id.* Royce, however, presented both audited and unaudited balance sheets and live testimony from Speer, its president and sole shareholder, whom this Court finds to be credible [FOF No. 3]. By introducing credible financial statements and live testimony into evidence, Royce objectively demonstrated that posting a full supersedeas bond would result in undue financial hardship for the company.

## IV. Conclusion

The Court concludes that Royce has carried its burden to show it will suffer undue financial hardship should its request for alternative security be denied. The Court also concludes that because Royce has no equity in any of the assets used in its normal business operations, the Court is willing to allow Royce to pledge its partnership interest in 501 Maple Ridge Ltd. as security in place of a bond. This interest, plus $25,000.00 in cash and $500.00 per closing, will furnish sufficient protection to Decker Oaks during the pendency of Royce's appeal. Decker Oaks must release its judgment liens on Royce's residential properties to allow Royce to continue its ongoing operations. For all of these reasons, the Court grants the Motion to Stay and the Motion to Remove Liens.

Simultaneous with the entry of this Memorandum Opinion on the docket, the Court will issue an order consistent with this Opinion.

Signed on this 21st day of July, 2008.

Jeff Bohm
U.S. Bankruptcy Judge